# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

LOGAN ADAM DEATON,              )
                                     )

        Petitioner,             )
                                     )

v.                                  )         Case No. CIV-13-1052-R
                                     )

JIM FARRIS, Warden,          )
                                     )

        Respondent.          )

## REPORT AND RECOMMENDATION

Petitioner, Logan Adam Deaton, appearing pro se, has filed an Amended Petition for Habeas Corpus Relief pursuant to 28 U.S.C. § 2254 [Doc. No. 7] challenging the constitutionality of his state court conviction in Case No. CF-2007-1914, District Court of Cleveland County, State of Oklahoma.[1]  Respondent has filed a Response [Doc. No. 16] and Petitioner has filed a Reply [Doc. No. 19].  Respondent has also submitted the State Court Records [Doc. No. 18].[2]

The matter is now at issue.  The matter has been referred by United States District Judge David L. Russell for proposed findings and recommendations consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons set forth below it is recommended that the Amended Petition be denied.

## I.  Procedural History

Petitioner was convicted, after jury trial, of First Degree Rape and acquitted of Assault and Battery with Intent to Kill.  Petitioner was sentenced to twenty-five years imprisonment.

---

[1]  The Court directed Petitioner to file an amended petition to correct deficiencies accompanying the original Petition.  *See* Order [Doc. No. 6].

[2]  The State Court Records include the Transcript of Jury Trial Proceedings held on December 1-4, 2008, hereinafter "Tr.___."

Petitioner filed a direct appeal of his conviction to the Oklahoma Court of Criminal Appeals (OCCA). On September 22, 2010, the OCCA affirmed Petitioner's conviction. *See* OCCA Summary Opinion [Doc. No. 16-3].

On May 6, 2011, Petitioner filed an Application for Post-Conviction Relief [Doc. No. 16-4]. On February 15, 2012, the state district court denied relief, in part, and granted an evidentiary hearing as to a claim premised on newly discovered evidence. *See* Summary Order [Doc. No. 16-5]. The court conducted the evidentiary hearing on April 5, 2012 and denied post-conviction relief by Order [Doc. No. 16-6] entered July 13, 2012. On June 6, 2013, the OCCA affirmed the state district court's denial of post-conviction relief. *See* OCCA Order [Doc. No. 16-8].

## II.     Grounds for Federal Habeas Corpus Relief

In this habeas action, Petitioner raises nine grounds for relief: (1) prosecutorial misconduct deprived Petitioner of a fundamentally fair trial; (2) the state trial court deprived Petitioner of the right to present a defense by limiting cross-examination of the victim; (3) the admission of unduly prejudicial photographs deprived Petitioner of a fundamentally fair trial; (4) failure to properly instruct the jury on the elements of the crime of rape deprived Petitioner of a fundamentally fair trial; (5) judicial misconduct deprived Petitioner of a fundamentally fair trial; (6) Petitioner was denied the right to effective assistance of trial counsel when counsel failed to move for a change in venue; (7) Petitioner was denied the right to effective assistance of appellate counsel based on counsel's failure to raise an ineffective assistance of trial counsel claim on direct appeal premised on trial counsel's decision to have Petitioner testify; (8) newly discovered evidence requires a reversal of Petitioner's conviction; and (9) Petitioner was denied

the right to effective assistance of appellate counsel based on counsel's failure to raise certain

issues on direct appeal.[3]

Petitioner raised Grounds One through Four on direct appeal of his conviction to the

OCCA. Petitioner raised Grounds Five through Nine in state post-conviction proceedings.

Respondent concedes that all grounds for relief are exhausted and timely filed. *See* Response at

p. 2, ¶¶ 4 and 5.[4]

## III.  Standard of Review

Petitioner's grounds for relief, adjudicated on the merits by the OCCA, are governed by

the standards of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA).[5] Pursuant to the AEDPA, this Court may grant habeas relief only if the state court's

adjudication "resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States."

28 U.S.C. § 2244(d)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so

long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods*

*v. Etherton*, -- U.S. --, 136 S.Ct. 1149, 1151 (2016) (internal quotation marks and citation

---

[3] Petitioner does not identify what claims his counsel should have raised on direct appeal. Because Petitioner subsequently filed claims in state post-conviction proceedings, the Court construes Petitioner's habeas claim to be based on appellate counsel's failure to raise the post-conviction issues on direct appeal. *See* discussion, infra.

[4] Petitioner filed a prior habeas action in this judicial district. *See Deaton v. State of Oklahoma et al*., Case No. CIV-10-1212-R. Petitioner voluntarily dismissed the action without prejudice pursuant to Fed. R. Civ. P. 41(a)(1) so that he could complete exhaustion of his claims before the Oklahoma courts.

[5] "An adjudication on the merits occurs when the state court resolves the case on substantive grounds, rather than procedural grounds." *Boyle v. McKune*, 544 F.3d 1132, 1137 (10th Cir. 2008) (citation omitted).

omitted).  "The state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* (internal quotation marks and citation omitted).

## IV.  <u>Analysis</u>

### A.  **Ground One – Prosecutorial Misconduct**

Petitioner's allegations of prosecutorial misconduct are based upon three distinct acts. First, Petitioner claims the prosecutor wrongfully injected evidence of a prior felony conviction even though the state district court had already decided that such evidence was inadmissible in a pretrial ruling on a motion in limine filed by the defense.  Second, Petitioner claims the prosecutor improperly appealed to juror sympathy for the victim during closing argument. Third, Petitioner claims the prosecutor "physically aligned herself with the victim in front of the sight of the jury."  *See* Amended Petition at p. 5.

Petitioner relied on these same acts in raising a claim of prosecutorial misconduct on direct appeal.[6]  The OCCA denied relief on this claim.  *See* OCCA Summary Opinion at p. 2. The OCCA found that: (1) "the trial court's admonitions to the jury cured the alleged errors" with respect to the evidence of Petitioner's prior conviction; (2) "[t]he prosecutor's closing argument was directly in response to the defense closing argument, thus it did not rise to the

-----

[6]  Petitioner additionally claimed on direct appeal that the cumulative effect of prosecutorial misconduct required reversal of his conviction. *See* Brief of Appellant [Doc. No. 16-1] at pp. 15-16.  However, Petitioner does not raise a cumulative error claim in the Amended Petition.  Instead, he references the issue for the first time in his Reply and then, only in conclusory fashion.  *See* Reply at p. 6.  Therefore, the Court finds Petitioner has waived the issue.  *Compare United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 (10th Cir. 2013) (recognizing that "[i]n civil cases . . . a party waives an issue in the district court if he waits to raise the argument until his reply brief" and that while "[s]ection 2255 petitions are, admittedly, strange and slippery creatures that defy traditional civil or criminal characterization . . . the same rule logically applies in a § 2255 proceeding . . . ." (internal quotation marks and citations omitted)) .

level of plain error; and (3) "the cumulative effect of the alleged errors did not deprive [Petitioner] of a fair trial." *Id.*

Petitioner does not claim that prosecutorial misconduct prejudiced a specific constitutional right but rather that he was denied a fundamentally fair trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005). Such a claim warrants habeas relief only if the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly,* 416 U.S. at 643.

The fundamental fairness inquiry requires an examination of the entire proceedings. *Id.*; *see also Patton*, 425 F.3d at 811 ("This determination may be made only after taking notice of all the surrounding circumstances, including the strength of the state's case." (internal quotation marks and citation omitted)). As the Tenth Circuit has instructed, "[t]o view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (internal quotations marks and citation omitted).

As set forth, the OCCA reviewed Petitioner's allegations of prosecutorial misconduct for plain error. While the OCCA did not enumerate each instance of prosecutorial misconduct, it concluded that no plain error occurred.[7] The determination reached by the OCCA is entitled to AEDPA deference. *See Douglas v. Workman*, 560 F.3d 1156, 1178-1179 (10th Cir. 2009) (addressing deference given to OCCA's plain error review of prosecutorial misconduct claims);

_____

[7] The OCCA did not separately address Petitioner's claim based on the prosecutor's alleged alignment with the victim.

5

*see also Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009) (where OCCA makes a merits decision denying a prosecutorial misconduct claim, the court, on habeas review, must "assess this decision through AEDPA's forgiving lens.").

### a. Prior Felony Conviction

Petitioner claims that during his testimony on cross-examination the prosecutor disregarded the trial court's pretrial ruling on a motion in limine and attempted to introduce evidence of Petitioner's prior felony conviction for child abuse. At trial, the prosecutor claimed the questioning was proper as impeachment evidence.[8]

The record shows that on cross-examination the prosecutor pursued the following line of questioning:

> Q.      Now, you have testified that Sara Wolf is jealous of you.
>
> A.      Yes.
>
> Q.      Is she jealous of you because you spend time with Ryan?
>
> A.      Yes. There would be times when she would actually try and make me go home because me and Ryan were having a good time, we were bonding with each other.
>
> Q.      Maybe she thought you weren't a good influence on him?
>
> A.      No.

---

[8] "Under Oklahoma law, a prior felony conviction is admissible for its impeachment value if [the] 'probative value of the evidence outweighs its prejudicial effect.'" *Cannon v. Trammell*, 796 F.3d 1256, 1273 (10th Cir. 2015) (*quoting Cline v. State*, 782 P.2d 399, 400 (Okla. Crim. App. 1989)); *see also* Okla. Stat. tit. 12, § 2609(A)(1). At trial the court excluded the evidence of Petitioner's prior conviction. However, at a hearing on Petitioner's post-trial motion to vacate his conviction, the trial court found that defendant placed his credibility at issue and pursuant to § 2609, "the State was entitled to impeach with th[e] prior conviction." *See* State Court Records [Doc. No. 18], Transcript of Proceedings Had on February 17, 2009 at pp. 9 -10.

Q.     No, that wasn't it?  Because you have been convicted in Case No.

CF 06-3511 in Oklahoma County of child abuse, correct?

Tr. 707.

Defense counsel objected to the last question prior to any response by Defendant and then moved for a mistrial, relying upon the court's purported pretrial ruling on a defense motion in limine regarding the prior conviction.[9]  After lengthy argument outside the presence of the jury, the trial court denied the motion for mistrial.  When the trial recommenced, the trial court gave the following curative instruction to the jury:

> THE COURT:  Ladies and gentleman, I do want to remind you that the evidence is the information that you receive from the witnesses on the stand.  Statements of counsel, whether they are questions that are posed, or statements that they make, are not evidence in and of themselves.  You are not to consider anything other than the evidence that comes directly from the witnesses' testimony and no statement by counsel, whether that is couched in terms of questions that they ask or information that they give you, as [sic] evidence in this case.

Tr. 728-29.  The jury is presumed to follow the trial court's curative instructions.  *See United States v. Morgan,* 748 F.3d 1024, 1042 (10th Cir. 2014); *Battenfield v. Gibson*, 236 F.3d 1215, 1225 (10th Cir. 2001).

As Respondent underscores, Petitioner never responded to the prosecutor's question.  Moreover, the jury acquitted Petitioner of the charges of Assault and Battery with Intent to Kill.

---

[9] As discussed infra in the context of Petitioner's claims of judicial misconduct and ineffective assistance of counsel, confusion existed by the prosecutor, defense counsel and the court as to the scope of that ruling.

Having reviewed the entire record, the weight of the evidence, the curative instruction the trial court gave and the deferential standard of review governing Petitioner's claim, Petitioner has not demonstrated that the prosecutor's conduct warrants habeas relief.

### b. Prosecutor's Remarks During Closing Argument

Petitioner further challenges remarks of the prosecutor during closing argument. Petitioner states:

> The prosecutor also appealed to the jury's sympathy for the victim during closing arguments telling the jury so yes he will have to register as a sex offender because he made some choices[;] he took the victims choices away from her[.] [Y]ou heard how she went to counseling for 3 months. So think about her when deciding how much time you give him and recommend that you start with 25 years.

*See* Amended Petition at p. 5.[10]

No objection was made to these comments at trial. And, the comments primarily constitute rebuttal to arguments made by defense counsel.[11] Clearly, prosecutor's remarks directed to encourage sympathy for the victim are not condoned, *see Moore v. Gibson*, 195 F.3d 1152, 1172 & n. 11 (10th Cir. 1999), but Petitioner has not demonstrated that these remarks, invited in large part by statements of defense counsel, rendered his trial fundamentally unfair. *See Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (prosecutor's remark that the defendant "had served only three months of his prior three-year sentence" did not support habeas

---

[10] Petitioner has paraphrased portions of the closing argument. *See* Tr. 856 ("Mr. Coyle talked to you about the fact that [the Defendant] is going to have to be a registered sex offender for the rest of his life. Yep. Yeah, he is. If you find him guilty, he is."); Tr. 858 ("You heard how she went to counseling for three months because of what happened to her. You can think about all of that stuff when you're deciding how much time to give."); Tr. 861 ("And I would submit to you that you start somewhere around 25 years on each count.").

[11] Defense counsel had emphasized to the jury that Petitioner was young and if convicted, would have to have to live in a cell the size of a bathroom and register as a sex offender giving him "a scarlet letter for the rest of [his] life." Tr. 830.

relief: "the strong evidence of guilt, the fact that the remarks occurred at the sentencing phase of the trial, the fact that the comments were made in response to statements by defense counsel, and the fact that the trial judge gave careful curative instructions to the jury combine to show that no fundamental unfairness resulted from the prosecutor's comments"); *see also Matthews*, 577 F.3d at 1189 (addressing "invited response doctrine" and finding no grounds for habeas relief where prosecutor's remarks were "more restrained than defense counsel's provocation"). The OCCA's determination of this issue is not contrary to, and did not involve an unreasonable application of, clearly established federal law.

### c.       Prosecutor's Alignment with the Victim

Petitioner also claims the prosecutor "physically aligned herself with the victim in front of the sight of the jury." *See* Amended Petition at p. 5. In his Reply, Petitioner further states that the prosecutor "accompanied the victim down the hallway" asking the victim if she was "alright" and that both the prosecutor and the victim were "visible to the jury while they were in the hallway[.]" *See* Reply at p. 5.

A record was made of this incident at trial. Defense counsel moved for a mistrial stating the following events had transpired in the presence of the jury:

> [DEFENSE COUNEL]:  . . . After – when the break began when we walked out in the hall, Ms. Miller walked Ms. Wolf out into the hall with, "Are you all right"? and paraded her through the jurors who were standing out there in the hall down to where her father was who – and then he took – and he followed her down to the end of the hall and he was consoling her down at the end of the hall in full view of the jurors.

It's wrong and it's improper to show that kind of emotion in front of the jurors and outside the courtroom. It's not right. So we move for a mistrial.

Tr. 353.

In response, the prosecutor stated the following:

[PROSECUTOR]: I didn't parade Ms. Wolf anywhere. I walked her down here to the end of your hallway and we took her back in that little nook so she would be out of the view of the jury. And I told her father and her boyfriend they could talk to her there, give her a hug if they needed to back in that area where no one could see her.

That's where I left them. And I told them to stay in that area where the jury couldn't see them. They weren't standing out in the hallway. They were back in the nook here by the stairwell when she was talking to her father and her boyfriend.

Tr. 353-54.

The trial court denied defense counsel's request for a mistrial and then gave a curative instruction to the jury. Tr. 354, 355.[12] Petitioner has not shown on the record presented that this incident rendered his trial fundamentally unfair. As the Supreme Court has noted, "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Moreover, no evidence has been presented to demonstrate that any juror actually heard or saw the prosecutor with the victim.

---

[12] The trial court instructed the jury only to consider "evidence that you receive in this courtroom" and that "[n]othing that you see outside the courtroom, hallways, bathrooms, downstairs, out smoking, on your way in, anything on the news, TVs, anything else, what evidence you are to consider is what happens in this courtroom from that witness stand." Tr. 355.

In sum, the Court has reviewed the challenged conduct of the prosecutor. Considering the weight of the evidence at trial, the trial judge's admonitions and curative instructions, and the challenged conduct and statements in the context of the record as a whole, Petitioner has failed to demonstrate the OCCA's determination of Petitioner's prosecutorial misconduct claims is contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court. Therefore, Ground One of the Petition should be denied.

**B.      Ground Two – Right to Present a Defense**

Petitioner next claims that limitations the trial court imposed on defense counsel's cross-examination of the victim violated his Sixth Amendment right to confrontation. Petitioner contends that the victim had serious substance abuse and other mental health issues that affected her ability to perceive what happened with respect to the alleged crime and to later accurately recall those events. He references medications the victim was allegedly taking for her psychological problems and a suicide attempt. *See* Amended Petition at p. 7; *see also* Reply at p. 7.

At trial, defense counsel asked the victim if she had been in a mental institution. Tr. 362. The prosecution objected. *Id*. Defense counsel then argued to the trial court that the line of questioning was pertinent to the victim's credibility. *Id*. The trial court ruled that defense counsel could inquire whether the victim had been in a mental institution prior to the alleged crime, but that any questioning as to the time period after the alleged crime would not be allowed. Tr. 362-63. Defense counsel then argued that "[a]fterwards would go directly to her mental state and her ability to recall events for her testimony today." Tr. 363. The trial court did not alter the ruling. Tr. 364. Defense counsel proceeded to ask the victim whether she had been

in a mental institution prior to the date of the alleged crime and the victim answered that she had not. *Id.*

On further cross-examination, the victim testified that she had punctured her throat with a pen during the period of time that she lived at the apartment where the rape occurred. Tr. 366-67. But the victim denied going to the hospital in relation thereto. Tr. 366. She also testified that she takes a prescribed drug, Effexor, for depression and that she was taking the drug at the time of the rape. Tr. 370. She testified she had not been told by her doctor to not mix Effexor with alcohol. *Id.*

Defense counsel further questioned the victim about her substance abuse. Tr. 380. The trial court limited the questioning to a period of days just prior to the incident. Tr. 379, 380. The victim testified that she drank a lot, smoked pot "pretty regularly" and used other drugs "[e]very once in a while." Tr. 380.

"The Sixth Amendment provides a right to confrontation, but trial judges can still impose reasonable limits on cross-examination." *In re Harper*, 725 F.3d 1253, 1260 (10th Cir. 2013) (*citing Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). "These limits include relevance and materiality." *Id.* (*citing United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005) ("a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense" (citations omitted)); *see also Dodd v. Trammell*, 753 F.3d 971, 985-86 (10th Cir. 2013) (addressing habeas claim premised on denial of right to present a defense and noting that "the Supreme Court has never questioned the traditional reasons for excluding evidence that may have some relevance" and further noting that the Supreme Court has "only rarely" held that such a right "was violated by the exclusion of defense evidence under a state rule of evidence") (citations omitted).

Here, the trial court ruled that evidence about the victim's mental state and substance abuse after the date of the alleged crime was not relevant. The OCCA found no abuse of discretion by the trial court and rejected Petitioner's claim on direct appeal. *See* OCCA Summary Opinion at p. 2. The OCCA's adjudication of the claim is entitled to AEDPA deference. *See Davis v. Workman*, 695 F.3d 1060, 1080-81 (10th Cir. 2012) (affirming district court's denial of habeas relief as to petitioner's claim that his "rights to confrontation and compulsory process were violated when the trial court did not allow him to question witnesses about an alleged affair of the victim's husband" and giving deference to OCCA's rejection of claim on grounds the state trial court did not abuse its discretion in excluding evidence on relevance grounds). Petitioner has not demonstrated that the OCCA's determination is contrary to or an unreasonably application of clearly established federal law. Ground Two of the Amended Petition, therefore, should be denied.

### C. Ground Three – Admission of Photographs

In support of his third ground for relief, Petitioner claims the admission of photographs of the victim's injuries denied him a fundamentally fair trial. Petitioner challenges the admission of the photographs claiming they were "needlessly repetitive and prejudicial." *See* Amended Petition at p. 8. Petitioner claims the cuts and bruises the victim sustained were not in dispute. He challenges the admission of photographs of the victim's face and neck (State's Exhibits 16-19 and 22-23). *See id.* He also challenges the admission of photographs (State's Exhibits 16 and 17) which depict the victim wearing a neck brace. Petitioner states that: "[t]here was nothing in the record to suggest that this was anymore [sic] than a precaution or that it was medically

necessary. However it does make her injuries appear more serious than they actually are." *See id.*[13]

The OCCA rejected Petitioner's claim on direct appeal finding that "the trial court did not abuse its discretion in admitting the photographs of the victim's injuries in this case." *See* OCCA Summary Opinion at pp. 2-3.

"Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999). "The essence of [the court's] inquiry under the Fifth, Sixth, and Eighth Amendments, as applied to the states under the Fourteenth Amendment, is whether the admission of the photographs rendered the proceedings fundamentally unfair." *Id.* at 1275 (citation omitted). "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and

---

[13] The record demonstrates that a total of nine photographs of the victim were admitted at trial. Respondent describes the photographs as follows:

> There were only nine pictures of the victim admitted at trial and only six were complained of on appeal. Exhibit 16 reflected the victim's head after the beating; Exhibit 17 reflected the left side of the victim's head; Exhibit 18 reflected the right side of the victim's head and specifically the gash across the eye; Exhibit 19 reflected the victim's neck and the bruising caused by the attempted choking; Exhibit 22 reflected the bruising to the chest; Exhibit 23 showed the bruising to the collarbone at the base of the neck (Tr. 353-360). Each picture depicted a different area of the body where the victim was beaten. The pictures not objected to or complained of on appeal showed injuries inflicted upon the victim's hand and her elbow and a picture which showed her injuries the day after the rape (Exhibits 24, 26, 27).

*See* Response at pp. 22-23. Respondent included the photographs with the Response. *See* Photographs [Doc. No. 16-11]. Respondent's summary accurately describes what is depicted in each of the photographs.

exercise considerable self-restraint."  *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (quotations omitted).

This Court concludes, based on all of the evidence presented at trial, that the challenged photographs were neither repetitive nor unduly prejudicial.  Instead, they were properly admitted to show the victim's injuries and depicted different aspects of those injuries.[14] Petitioner, therefore, has failed to demonstrate that the admission of the photographs rendered his trial fundamentally unfair.  Because the OCCA's adjudication of the issue was not contrary to or an unreasonable application of federal law as determined by the Supreme Court, the claim raised in Ground Three of the Amended Petition should be denied.

### D.     Ground Four – Jury Instruction Error

Petitioner claims in Ground Four of the Amended Petition that the jury instructions did not properly instruct the jury on the elements of the crime of rape.  The trial court gave the Oklahoma Uniform Jury Instruction (OUJI) on the elements of the crime.   But Petitioner contends the instruction was erroneous because it failed to require that force be used to accomplish the rape. On direct appeal, Petitioner explained that as given, "the jury could find that the sex was consensual, but that force was used . . . [i]n other words, the jury could find the evidence consistent with rough, but consensual sex."  *See* Brief of Appellant [Doc. No. 16-1] at p. 22.  Petitioner further contended "[u]nder the instructions given, the jury would have to return a verdict of guilty, even though these facts do not constitute rape."[15]

---

[14] Further, as Respondent points out, the fact that Petitioner was acquitted of the charge of Assault and Battery with Intent to Kill undermines any argument that the admission of the photographs was unduly prejudicial.

[15] At trial, defense counsel objected to the instruction as follows:

The record establishes that the trial court gave the uniform instruction and instructed the jury that Petitioner could not be convicted of rape unless the State proved the following elements beyond a reasonable doubt:

First, sexual intercourse;

Second, with a person who was not the spouse of the defendant;

Third, where force/violence was used against the victim.

See Brief of Appellant [Doc. No. 16-1] at p. 22 (citing Original Record at 142); see also OUJI-CR 4-120 (2d ed.); Okla. Stat tit. 21, § 1111(A)(3).

The OCCA upheld the sufficiency of the uniform instruction:

[W]e find that the giving of the Uniform Instructions on the elements of rape, OUJI-CR 2d 4-120 (1996), was sufficient to encompass Appellant's proffered defense of consent. The elements of rape specifically exclude the possibility that the intercourse was consensual, and the instruction is substantially in the language of the rape statutes.

See OCCA Summary Opinion at p. 3 (citation omitted).

"Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the error had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense." *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990). Thus, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). The petitioner who attacks a state conviction on the basis of the jury instructions "has a

---

[DEFENSE COUNSEL]: Yes, ma'am, we object to – it is OUJI-CR 4-120. And we object to it because what it in essence does, as I said yesterday, makes rough sex a crime. And it should include the element of without consent. And that has always been part of the law of sexual assault and rape, and it should be included in the jury instructions.

Tr. 665-66.

great burden." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995). Where, as here, the habeas challenge is based on a refusal to give a requested jury instruction, the burden on the petitioner is especially great. *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999). This is because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* (internal quotations omitted) (*quoting Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

A virtually identical habeas challenge was raised by an Oklahoma state prisoner in *Brown v. Franklin*, No. CIV-09-290-C, 2009 WL 3415300 (W.D. Okla. Oct. 16, 2009) (unpublished op.). In *Brown*, the magistrate judge concluded that the same uniform instruction at issue here "stated the applicable law" and "provided that a 'rape' would have had to include force or violence." *Id.* at *5. "Thus, if sexual intercourse had taken place through mutual consent, the jury could not have found [the petitioner] guilty of rape based on the instructions that were given." *Id.* The magistrate judge found the issue presented was similar to the issued addressed in *United States v. Martin*, 528 F.3d 746 (10th Cir. 2008) and that *Martin* "compel[led] rejection of [the petitioner's] habeas claim. *Id.* at *6. The district court adopted the findings of the magistrate judge. *Id.* at *1.

In *Martin*, the defendant argued, on direct appeal of his conviction, that the district court erred by refusing to give his requested jury instruction on the victim's consent to the sexual act. The Tenth Circuit rejected the claim and found the instructions as a whole "correctly convey[ed] that the sex must be nonconsensual, and therefore 'accurately informed the jury of the governing law.'" *Id.* at 752. As in this case, the instructions required use of force by the defendant as an element of the offense. *Id.* The Tenth Circuit found that the nonconsensual nature of the required act was encompassed by the requirement that the sexual act resulted from use of force or serious threat. *Id.* This Court finds the reasoning in *Brown* and *Martin* persuasive.

Petitioner is not entitled to habeas relief based on any alleged error in the state court's interpretation of state law with respect to the requested instruction. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). And Petitioner has not shown that the state trial court's failure to instruct on consent rendered his trial fundamentally unfair. The OCCA's adjudication of this issue is entitled to AEDPA deference and Ground Four of the Amended Petition should be denied.

### E.     Ground Five – Judicial Misconduct

In Ground Five, Petitioner puts a different cast on the prosecutorial misconduct claim raised in Ground One arising from the prosecutor's attempt to introduce evidence of Petitioner's prior felony conviction. Petitioner heads this claim "Judicial Misconduct." *See* Amended Petition at p. 13.[16] He then recites the same facts regarding the pretrial ruling on the motion in limine and contends that the trial judge's failure to declare a mistrial constitutes a violation of his due process rights on grounds of fundamental unfairness. He also references the trial judge's remarks during trial when addressing this issue where she acknowledged some responsibility for the parties' confusion regarding the scope of the ruling on the motion in limine.[17]

---

[16] The OCCA provided the following explanation for the heading Petitioner used in support of this claim:

> When ruling on trial counsel's motion for mistrial, Judge Walkley expressed regret in not ensuring the precise pretrial ruling she had made on Petitioner's motion in limine was clearly stated and understood. Petitioner's selected title of 'Judicial Misconduct' for Proposition 5 is his chosen reference to Judge Walkley's comment.

*See* OCCA Opinion at p. 4. This Court has set forth the state trial judge's referenced comment more fully and in context. *See infra*, footnote 17.

[17] The trial judge stated the following:

> THE COURT: Well, I agree, a criminal jury trial is not a game of gotcha. And that goes to the defendant and defense counsel as well as to the State and to the Court. I take responsibility for there being a hole in the record. The fault is

Petitioner first raised this claim in state post-conviction proceedings. The OCCA affirmed the denial of post-conviction relief. The OCCA reviewed the claim through the lens of Petitioner's claim of ineffective assistance of appellate counsel. *See* OCCA Order [Doc. No. 16-8] at p. 3. The OCCA concluded that appellate counsel was not ineffective because the claim had been raised by appellate counsel on direct appeal (cast as a claim of prosecutorial misconduct). *See id.* at p. 12 ("Because appellate counsel raised the issue presented in Proposition 5 . . . Petitioner fails to show that he received ineffective assistance on appeal.").

Petitioner's attempt to recast his prosecutorial misconduct claim as an independent claim of judicial misconduct is futile. "[A]lleged violations of state codes of conduct are not cognizable in federal habeas." *McPherson v. Miers*, 7 F. App'x 845, 849 (10th Cir. 2001) (rejecting habeas petitioner's "judicial misconduct claim").

To the extent Petitioner claims judicial bias, the record does not support such a claim. To succeed on such a claim, Petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larken*, 421 U.S. 35, 47 (1975). As the OCCA found

---

mine. It is not a mistake I will ever make again, ever, to have what I believe to be agreeable to both the State and the defense attorney a more casual, less formal conversation in chambers about these motions in limine understanding that we would make a record about them later. Not a mistake I will make again.

In that conversation we talked about doors being opened, that motions in limine are always conditional, provisional rulings, that they can be reviewed based upon the evidence. This is not a game of gotcha. It is not for the defense to hide behind a summary order that is very summary and I should have made a better record. The fault is mine. Nor is it for the State to walk through without asking permission to do so.

I have my culpability here. Mr. Coyle, you have yours. Ms. Miller, you have yours. The fact of the matter is we are where we are and a bell has been rung that I don't know I can unring.

Tr. at p. 725. After making these statements, the trial court then found the evidence would have been admissible to challenge Petitioner's credibility and denied the defense's motion for a mistrial. *Id.* at 726.

in the context of addressing Petitioner's claim of ineffective assistance of appellate counsel (discussed infra):

> The record made at the bench reveals a misunderstanding existed as to whether the prohibition against mentioning Petitioner's prior conviction applied if Petitioner took the stand and testified. [footnote omitted]  In resolving the matter, Judge Walkley denied defense counsel's motion for a mistrial but gave a curative instruction and admonished the prosecutor not to bring up the prior conviction again during the trial.

*See* OCCA Order at p. 4 (*citing* Tr. 725-29).  Nothing in the record suggests judicial bias was at play.

The Court has previously determined that the failure to declare a mistrial based on the prosecutor's attempt to introduce evidence of Petitioner's prior felony conviction did not deprive Petitioner of his due process rights.  Petitioner's recasting of that claim as "judicial misconduct" does not change that determination or provide independent grounds for habeas relief.  Therefore, the claim raised in Ground Five should be denied.

### F.      Ground Six – Ineffective Assistance of Trial Counsel

In Ground Six, Petitioner brings a claim of ineffective assistance of trial counsel. Petitioner contends that trial counsel should have requested a change of venue because the victim's father is an attorney who regularly appears in the judicial district where Petitioner's criminal proceedings were held.

Petitioner claims in Ground Nine of the Petition that appellate counsel was ineffective for failing to raise this and other claims of ineffective assistance of trial counsel on direct appeal of Petitioner's conviction.  The appellate counsel claim necessarily requires a review of the merits of the trial counsel claim.  *See Manning v. Patton*, -- F. App'x --, No. 15-5072, 2016 WL 324855 at *2 (10th Cir. Jan. 27, 2016) (unpublished op.) ("Because Manning alleges that his appellate counsel was deficient in omitting the issue of ineffective trial counsel on direct appeal, we must

first consider the merits of the omitted issue.) (*citing Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) ("If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance."). Therefore, the Court addresses this claim infra, in the context of Petitioner's Ground Nine, and finds habeas relief should be denied.

### G. Ground Eight – Newly Discovered Evidence

Petitioner next brings a claim premised on newly discovered evidence of actual innocence. He first raised this claim during state post-conviction proceedings and the trial court conducted an evidentiary hearing on the matter. *See* State Court Records [Doc. No. 18], Transcript of Proceedings Had on April 5, 2012) ("Post-Conviction Tr."). The new evidence consisted of the testimony of two witnesses, Nicole Gregory and Alice Katona.

Nicole Gregory is the sister of Ryan Gregory. Ryan Gregory was dating the victim at the time of the rape.[18] Ms. Gregory testified that the victim told her that Ryan Gregory had forced the victim to have sex with him in the back of his car in September or October of 2010. *See* Post-Conviction Tr. at pp. 7-8. Ms. Gregory further testified that Ryan Gregory denied these allegations. She also testified that the victim never told her that Petitioner did not rape her. *Id.* at p. 9. Ultimately Ms. Gregory testified that in her opinion, the victim had alleged she had been

---

[18] Ryan Gregory shared an apartment with the victim. Tr. 287, 682, 685. The rape occurred at the apartment. Petitioner had come over to the apartment on the night of the rape. Tr. 292-93, 683-84. The victim, Petitioner and Ryan Gregory had been drinking, taking drugs and huffing Chemtool that night. Tr. 290-91, 297-98, 447, 450. At some point, the victim testified that Ryan Gregory left the apartment and later returned. Tr. 299. After she was raped, the victim tried to wake Ryan Gregory but could not do so. Tr. 337-38. Eventually, the police were able to wake him. Tr. 344.

Ryan Gregory does not remember leaving the apartment. His last memory that night was standing up drinking with Petitioner. Tr. 454, 455-56. Therefore, he has no recollection of the rape.

According to Petitioner's testimony, Ryan Gregory was passed out in the living room of the apartment at the time Petitioner and the victim had consensual sex. Tr. 691-93, 758. Petitioner testified Ryan Gregory was "[n]ext to us," eight or nine feet away. Tr. 758.

raped on too many occasions – testimony challenging the victim's credibility. *Id*. at 11. In addition, in response to questions by the trial court, Ms. Gregory testified that she thought her brother was responsible for the rape and that her brother had a problem abusing women. *Id*. at 20.

Testimony was also heard from Alice Katona, the grandmother of both Petitioner and Ryan Gregory.[19] Ms. Katona testified that Ryan Gregory told her that he had beat the victim up on the night at issue, not Petitioner. *See* Post-Conviction Tr. at 22.[20] Ms. Katona also testified that she had heard that Ryan Gregory had been violent toward the victim and that the victim had substance abuse problems. *Id*. at 23-25.

The trial court denied relief on this claim in an Order filed July 13, 2012. *See* Order [Doc. No. 16-6]. The court deemed the testimony presented at the hearing "may have been material" and was "not available at the time of trial." *Id*. at p. 3, ¶ 8. The court further found the testimony was not cumulative and was contrary to the statements of the victim and Ryan Gregory at trial. *Id*. But the court concluded that "based upon the totality of the alleged admissions and the incongruency of the statements with the other testimony adduced at trial, it is highly unlikely that there is any probability that the triers of fact would have reached a different result." *Id*. at pp. 3-4, ¶ 8.

The OCCA affirmed the trial court's denial of post-conviction relief on grounds of newly discovered evidence. *See* OCCA Order [Doc. No. 16-8]. The OCCA found:

---

[19] The record demonstrates that Petitioner and Ryan Gregory are cousins. *See, e.g*., Tr. 285.

[20] On cross examination, Ms. Katona confirmed that Ryan Gregory did not tell her that he raped the victim nor did Ryan Gregory tell her that Petitioner did not rape the victim. Post-Conviction Tr. at 28. She reiterated that Ryan Gregory told her he had beat the victim up earlier in the night before Petitioner had come to the apartment. *Id*. at 30-32.

Petitioner's new evidence consisted of inconsistent statements by two State witnesses made approximately two years after the jury verdict in Petitioner's case. Those statements provided nothing more than evidence for impeachment. This Court had held that newly discovered evidence which goes to impeachment purposes only is not sufficient to warrant a new trial. Additionally, whether a post-conviction motion for new trial on the grounds of newly discovered evidence will be granted is within the discretion of the trial court and this Court will not reverse unless there is an abuse of that discretion. Petitioner has not demonstrated Judge Walkley abused her discretion in denying him post-conviction relief on his new evidence claim.

*Id*. at pp. 10-11 (internal quotation marks, alterations and citations omitted).

Petitioner is not entitled to habeas relief on this claim. Fundamentally, Petitioner purports to bring a stand-alone claim of actual innocence. The Tenth Circuit has refused to endorse a claim of actual innocence as a stand-alone claim. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). And "as yet, it is an open question whether such a federal right exists." *Case v. Hatch*, 731 F.3d 1015, 1036 (10th Cir. 2013) (*citing District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71–72 (2009)).

Moreover, Petitioner has not demonstrated the OCCA's adjudication of this issue was contrary to, or an unreasonable application of, clearly establish federal law as determined by the Supreme Court. Petitioner relies on impeachment evidence which he claims would support reasonable doubt as to his guilt. But such evidence without more is insufficient to support the extraordinarily high threshold to support an actual innocence claim. *See Clayton v. Gibson*, 199 F.3d 1162, 1180 (10th Cir. 1999) ("The evidence which [the petitioner] asserts as newly discovered evidence barely aids his case and is merely impeaching evidence that would not cause a rational person to doubt [the petitioner's] guilt." (*citing Stafford v. Saffle*, 34 F.3d 1557, 1561

(10th Cir. 1994)).  The Court finds, therefore, that Petitioner's claim of actual innocence raised in Ground Eight of the Amended Petition should be denied.

### H.    Grounds Seven and Nine – Ineffective Assistance of Appellate Counsel

Petitioner claims in Ground Seven that appellate counsel should have raised a claim of ineffective assistance of trial counsel on direct appeal, premised on Petitioner's testimony at trial. Petitioner contends defense counsel should not have advised Petitioner to testify because the evidence of his prior conviction was admitted as a result of Petitioner having testified.

In Ground Nine, Petitioner claims that his appellate counsel ignored Petitioner's requests to raise certain issues on direct appeal and refused to speak with Petitioner about his appeal. Petitioner does not identify these issues.  However, in his Reply, Petitioner contends that appellate counsel was ineffective for failing to raise a trial counsel claim based on a failure to request a change in venue.  He also claims appellate counsel should have raised the judicial misconduct claim that Petitioner later raised in post-conviction proceedings.  *See* Reply at pp. 14-15.  In those post-conviction proceedings, the OCCA construed (and reviewed) Petitioner's ineffective assistance of appellate counsel claim as based upon appellate counsel's failure to raise an issue of judicial misconduct (raised as proposition five in post-conviction proceedings); failure to raise ineffective assistance of trial counsel for not requesting a change of venue (raised as proposition six in post-conviction proceedings) and failure to raise the ineffective assistance of trial counsel claim raised in Ground Seven of the Amended Petition (raised as proposition seven in post-conviction proceedings).  *See* OCCA Order [Doc. No. 16-8] at p. 3.[21]  Accordingly,

---

[21] The OCCA stated the following:

In his Proposition 9 before the District Court, Petitioner alleged his appellate counsel provided him ineffective assistance because of 'the omission of certain issues' that counsel refused to raise in the direct appeal. (O.R. 361).

the Court construes Ground Nine as premised on appellate counsel's failure to raise the claims of judicial misconduct and trial counsel's failure to request a change in venue.

The OCCA affirmed the district court's denial of post-conviction relief as to Petitioner's claims of ineffective assistance of appellate counsel. The OCCA found appellate counsel did, in fact, raise the issue of judicial misconduct and, therefore, counsel could not have been ineffective for failing to raise the issue. *See* OCCA Order at p. 12. And the OCCA found the claims of ineffective assistance of trial counsel did not present issues of "appellate merit" and, therefore, his claims of ineffective assistance of appellate counsel necessarily failed. *Id.*

*Strickland v. Washington* , 466 U.S. 668 (1984), sets forth the clearly established federal law governing Petitioner's claim of ineffective assistance of appellate counsel. *See Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014). As previously addressed, "[t]he very focus of a *Strickland* inquiry regarding performance of appellate counsel is upon the merits of omitted issues . . . ." *Id.* at 670 (internal quotation marks and citations omitted). Because the OCCA looked to the merits of the omitted ineffective assistance of trial counsel claims to conclude appellate counsel was not ineffective, AEDPA deference applies and Petitioner is entitled to relief only if the OCCA's adjudication of the issue was contrary to or an unreasonable application of clearly established federal law.

---

Although the text of Petitioner's Proposition 9 neglects to list the 'certain issues' that he alleges his appellate counsel omitted, several documents referred to in Proposition 9 are attached to the Application. The attached documents reveal the 'certain issues' to be the same as that presented in Propositions 5, 6, and 7 of the Application. The District Court did not find Petitioner's Proposition 9 proved Petitioner to be entitled to post-conviction relief.

*See* OCCA Order at p. 3.

The OCCA did not, however, address the merits of the omitted judicial misconduct claim in concluding that appellate counsel was not ineffective for failing to raise that claim on direct appeal. Instead, the OCCA determined that the claim of judicial misconduct had, in fact, been raised on direct appeal. As discussed below, the Court finds the OCCA's determination is not supported by the record. Therefore, AEDPA deference does not apply and the Court reviews de novo the ineffective assistance of appellate counsel claim regarding judicial misconduct. *See Milton*, 744 F.3d at 671 (explaining that where AEDPA deference does not apply, the court must review the claim de novo).

### 1. Ineffective Assistance of Trial Counsel

Petitioner's ineffective assistance of trial counsel claims are also governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of both deficient performance by counsel and prejudice to the habeas petitioner as a result of the deficient performance. *Id.* at 687. Because the OCCA reviewed the ineffective assistance of counsel claims on the merits, AEDPA deference applies. Moreover, AEDPA review is "doubly deferential" when the claim at issue is one for ineffective assistance of counsel. *Woods*, 136 S.Ct. at 1151. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable, profession judgment" and on habeas review, the court must afford "both the state court and the defense attorney the benefit of the doubt." *Id.* (citations omitted).

### a. Change of Venue

Petitioner claims trial counsel should have moved for a change in venue. According to Petitioner, the victim's father is "a corrupt mind attorney who was barred from stealing money from his clients in the same county where the charges were filed and filed by [the victim's]

father himself." *See* Amended Petition at p. 14. Petitioner contends the victim's father "testified against defendant on behalf of the assistant D.A. with over familiarization [sic] with the A.D.A.'s and the Judge." *Id.* Petitioner further contends that due to the relationship of the victim's father with "his associates, the A.D.A.'s and the Judge, Petitioner was "never going to have a fair trial to begin with." *Id.*

The state district court denied this claim as "frivolous" stating that "[t]he allegations regarding the character of the victim's father would not give rise to a change of venue." *See* Summary Order [Doc. No. 16-5] at p. 2. The OCCA affirmed the denial of post-conviction relief as to Petitioner's claim of ineffective assistance of appellate counsel based on trial counsel's failure to request a change of venue and expressly noted the district court's finding that the underlying claim was frivolous. *See* OCCA Order [Doc. No. 16-8] at p. 12.

Petitioner does not support the allegations about the victim's father with any facts. Instead, his claim is premised entirely on speculation. As Respondent notes, during voir dire, the trial court made inquiry to ensure no juror knew the victim's father. Tr. 22-23, 25, 26. And, Petitioner does not claim juror bias, but instead emphasizes the relationship of the victim's father with the prosecution and/or the judge. *See* Reply at pp. 12-13 (explaining that Petitioner's claim is not about whether the jury knew the victim's father was "an attorney in that county" but that the victim's father was "too familiar with the state prosecutors" and "had the ability to build up anger with the Assistant D.A. and Judge, of passion against me in a manner to make them side with him").

Claims of prosecutorial misconduct and judicial bias have been addressed and found to be without merit. Petitioner identifies no other record evidence to support any purported bias or prejudice suffered by him. Under these circumstances, the Court agrees that Petitioner's claim

that trial counsel was ineffective for failing to request a change of venue is frivolous. Because the ineffective assistance of trial counsel lacks merit, Ground Six of the Petition should be denied and Petitioner's ineffective assistance of appellate counsel claim raised in Ground Nine necessarily fails. The OCCA's determination of this issue is not contrary to or an unreasonable application of *Strickland*. Accordingly, habeas relief should be denied.

### b. Petitioner's Decision to Testify at Trial and Evidence of His Prior Conviction

Petitioner also claims trial counsel was ineffective for allowing him to take the stand. He bases this claim on the facts surrounding the motion in limine and Petitioner's prior conviction for child abuse discussed above in the context of Petitioner's prosecutorial misconduct claim. Petitioner specifically cites a statement his trial counsel made when moving for a mistrial based on the prosecutor's attempt to introduce evidence of the prior conviction. *See* Reply at pp. 13-14 (*citing* Tr. 717-721).

In context, trial counsel was responding to a statement made by the trial judge that the prior conviction was admissible as "impeachment evidence" and that the "[t]he ruling on the motion in limine was dependent upon whether [Petitioner] testified or not." Tr. 709. Trial counsel stated:

> That is not my understanding of the law and that is not my understanding
> of the Court's ruling. Had it been different, I would have never put him
> on the stand. I am – I mean, I don't know what to say other than I had
> obviously a different understanding of your ruling.

Tr. 709. Based on this statement and related statements, Petitioner claims trial counsel erroneously advised him to testify at trial.

Petitioner has not shown either deficient performance or prejudice. To establish deficient performance, Petitioner must demonstrate that counsel's performance was objectively unreasonable. *See Strickland*, 466 U.S. at 688, 694. But the record here fails to support a finding of deficient performance. As the OCCA concluded: "Petitioner ignores the fact his child abuse conviction was not placed into evidence, that the District Court did not permit the prosecutor to use it to impeach Petitioner, that the prosecutor's attempt to do so was blocked by his trial counsel's objection, that a curative instruction from the trial judge was given, and that this Court found on appeal that any error occurring had been cured by the trial court's admonitions to the jury." *See* OCCA Order [Doc. No. 16-8] at pp. 8-9.[22] Indeed the record establishes trial counsel sought to exclude evidence of Petitioner's prior conviction through the filing of a pretrial motion in limine, counseled Petitioner not to "open the door" to evidence of the prior conviction, moved for a mistrial immediately upon the prosecutor's attempt to introduce that evidence, and ensured that the trial court gave a curative instruction to the jury. Under these circumstances counsel's performance was not deficient.

To show prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 688, 694. Petitioner has failed to demonstrate that had he not taken the stand, the results of the proceedings would have been different.

As the OCCA observed, "on the night which [the victim] reported Petitioner had raped her, seminal fluid was removed from her vagina that contained DNA matching the DNA profile of Petitioner." *See* OCCA Order [Doc. No. 16-8] at pp. 8-9, n. 2 (*citing* Tr. 625-27, 634-36).

---

[22] The OCCA further concluded that Petitioner failed to demonstrate that his decision not to testify turned solely on misadvice regarding the admissibility of his prior conviction. *Id.* at p. 8.

Petitioner did not deny that he had sexual intercourse with the victim but claimed it was consensual. *Id.* The OCCA found that "Petitioner fails to explain on post-conviction how his trial counsel could have more effectively defended against the [victim's] rape allegation and the DNA evidence accompanying it by encouraging Petitioner not to testify." *Id.* Petitioner fails to demonstrate that but for trial counsel's advice, there is a reasonable probability that the result of the proceedings would have been different.

In sum, Petitioner has not overcome AEDPA's doubly deferential standard as to his claims of ineffective assistance of trial and appellate counsel. Accordingly, the claim raised in Ground Six premised on ineffective assistance of trial counsel and the claims raised in Grounds Seven and Nine premised on appellate counsel's failure to raise claims of ineffective assistance of trial counsel on direct appeal should be denied.

### 2. Judicial Misconduct

A review of the record shows, contrary to the OCCA's finding, that Petitioner did not raise an *independent* claim of judicial misconduct on direct appeal. Instead, Petitioner brought a claim of prosecutorial misconduct based on the same facts underpinning his judicial misconduct claim. As fully discussed above, Petitioner claimed on direct appeal that the prosecutor's misconduct – attempting to introduce evidence of a prior felony conviction – required a mistrial because the trial court had made a conditional pretrial ruling that such evidence was inadmissible.

In post-conviction proceedings, Petitioner claimed the trial court's failure to grant a mistrial constituted judicial misconduct. Although Petitioner relied on the same underlying facts in support of this claim, as discussed above, the claims are legally distinct and governed by

different standards.[23]   For this reason, the Court declines to give deference to the OCCA's finding that the judicial misconduct claim was raised on direct appeal and, therefore, appellate counsel was not ineffective for failing to raise the claim.

Nonetheless, on de novo review, Petitioner's ineffective assistance of appellate claim raised in Ground Nine and premised on counsel's failure to raise a claim of judicial misconduct does not warrant habeas relief.   As discussed above, the underlying judicial misconduct claim is meritless.   Therefore, Petitioner's appellate counsel claim necessarily fails and habeas relief should be denied.

## RECOMMENDATION

It is recommended that the Amended Petition [Doc. No. 7] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objection must be filed with the Clerk of the District Court by June 21, 2016.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[23] The state district court clearly treated the claims as distinct in ruling on Petitioner's application for post-conviction relief.  The court found the claim of prosecutorial misconduct was barred by res judicata as a claim that was previously raised on direct appeal and denied.  *See* Summary Order [Doc. No. 16-5] at p. 1.  And the court found the claim of ineffective assistance of appellate counsel for failure to raise a claim of judicial misconduct lacked merit based on its related finding that "[n]o judicial misconduct was committed."  *See id.* at pp. 1-2.

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 31st day of May, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE